No. 10,564.

LOEHR, GUARDIAN, v. COLBORN ET AL.

MORTGAGE.—*Indemnifying a Surety.*—*Foreclosure by Creditor.*—*Subrogation.*—
A mortgage by the principal debtor to his surety, to secure the debt as
well as to indemnify the surety, and containing a covenant to pay the
debt, enures to the benefit of the creditor, and may be foreclosed by him,
nor will a release of the sureties prevent it.

SAME.—*Parties.*—*Guardianship.*—*Judgment.*—*Trustees.*—A guardian who has
obtained a judgment in his name as such, on the relation of the State,
for breach of the conditions of his predecessor's bond, holds such judg-
ment as trustee of an express trust, and a decree of foreclosure of an
older mortgage on lands, upon which the judgment is also a lien, con-
cludes the ward, if the guardian was a party thereto.

From the Hamilton Circuit Court.

*F. M. Trissal*, for appellant.

*T. J. Kane* and *T. P. Davis*, for appellees.

NIBLACK, J.—The complaint in this case is by Edgar
C. Loehr, as guardian of the person and estate of Anna L.
Frankhauser, and avers that Cincinnatus B. Williams was,
on the 1st day of July, 1875, by the Hamilton Circuit Court,
appointed guardian of the said Anna L. Frankhauser, and,
on that day, executed his bond as such guardian in the penal
sum of $3,000, with Isaac Williams, Josiah Durfee and
Aaron Giger, as his sureties, conditioned according to law;
that after entering upon his duties, as such guardian, the said
Cincinnatus B. Williams received from the government of the
United States the sum of $1,500, pension money belonging
to his said ward, all of which, during the year 1876, he con-
verted to his own use; that at the April term, 1879, of the
Hamilton Circuit Court, he, the said Cincinnatus B. Wil-
liams, was removed from his trust as guardian of the said
Anna, and one Theodore Johnson, was thereupon appointed
his successor in such guardianship; that on the 25th day of
July, 1879, the said Johnson, in the name of the State, and
on his relation as such guardian, commenced an action against
the said Cincinnatus B. Williams and his said sureties, on,

the guardian's bond, executed by them as herein above stated, in the said Hamilton Circuit Court, and on the 20th day of September, 1879, recovered judgment in said action, on account of the defalcation of the said Cincinnatus B. Williams, for the sum of $1,271.38, and costs of suit taxed at $42, which judgment became a lien on all the real estate held by any one of the defendants in that action on said 25th day of July, 1879; that after the recovery of such judgment the said Johnson resigned his said guardianship, without having collected said judgment, or any part thereof, and leaving it in full force against the defendants thereto; that the plaintiff, Loehr, was afterwards appointed to succeed the said Johnson in the trust which he had so resigned, and thereby became the guardian of the person and estate of the said Anna; that on said 20th day of September, 1879, and for many years prior thereto, the said Isaac Williams, Josiah Durfee and Aaron Giger were the owners of certain real estate, hereinafter described; that a mortgage had previously been executed upon said real estate as follows:

" This indenture witnesseth, that Isaac Williams, Aaron Giger and Josiah Durfee, partners doing business under the firm name of Williams, Giger & Durfee, of Hamilton county, Indiana, mortgage and warrant to Peter Cloud and Jacob Giger * * the following real estate in Hamilton county, in the State of Indiana, to wit: Lots numbered one (1) and two (2), in square number one (1), in William A. Emmons' addition to the town of Noblesville; lots number four (4), five (5) and six (6), in block number five (5), in Leonard Wilds' addition to the town of Noblesville, and also lot number four (4), in the R. A. Condin's addition to the town of Noblesville, which said real estate is owned and held by the mortgagors as such partners, together with all mills and machinery situate on said real estate; to secure the payment, when the same becomes due, of one promissory note, dated February 15th, 1878, due twelve months after date, payable to Colborn, Peters & Co., for $4,000 with ten per cent. interest from date, and five per

cent. attorney's fees, without relief whatever from valuation or appraisement laws, executed by said mortgagors as principals and said mortgagees as sureties; and this mortgage is made to secure and indemnify the said Cloud and Jacob Giger from any and all loss and damage they may sustain by reason of such suretyship. The mortgagors expressly agree to pay the sum of money above secured without relief from valuation laws. In witness whereof the mortgagors have hereunto set their hands and seals this ·24th day of August, 1878."

Which mortgage was, on the day of its date, signed and acknowledged in due form by the mortgagors, and afterwards, on the 17th day of January, 1879, recorded in the recorder's office of Hamilton county; that neither the said Jacob Giger nor the said Peter Cloud has ever paid any part of the indebtedness for which said mortgage was executed to them as an indemnity, nor has either one of them ever sustained any loss or damage by reason of their said suretyship, but on the contrary they, and each of them, have been released from all liability on account of such suretyship by Colborn, Peters & Co., the payees of the note described in the mortgage; that Abraham R. Colborn, as the surviving partner of the firm of Colborn, Peters & Co., filed his complaint in the Hamilton Circuit Court, on the 2d day of December, 1879, to foreclose the mortgage herein above set out, and made defendants to such foreclosure proceedings the above described mortgagors and their wives, and Josephine Boswell, John Boswell, Dillie Ritchie, Sarah M. Ritchie, Jane Ritchie, Charles Ritchie, Lucy A. Haines, the Citizens Bank of Noblesville,· Thomas E. Teters, administrator of the estate of William H. Ritchie, and the State of Indiana on the relation of Theodore Johnson, as guardian of the said Anna L. Frankhauser; that the complaint so filed by Colborn contained, amongst other things, the following allegations: " Said plaintiff says that, on the 24th day of August, 1878, said defendants Williams, Giger & Durfee, in the name and style of Isaac Williams, J. Durfee and Aaron Giger, executed their certain * *

mortgage conveying to Peter Cloud and Jacob Giger, the
real estate therein as follows:" (then follows a description
of the same real estate contained in the mortgage,) "as security
for the payment of a debt evidenced by a note, dated Feb-
ruary 15th, 1878, executed by said defendants Isaac Williams,
Aaron Giger and Josiah Durfee, in the firm and style of
Williams, Giger & Durfee, and by said Peter Cloud and Ja-
cob Giger, in their own proper names. Said debt so secured
and evidenced by said note, amounting at the time to the sum
of $4,000, bearing interest at ten per cent. and attorney's fees
at five per cent., and also for the further purpose of indem-
nifying and saving harmless said Peter Cloud and Jacob
Giger, who signed said note as surety for said defendants
Williams, Giger & Durfee.    *    *    *    *    *    *
Said plaintiff further avers that said mortgage was duly re-
corded on the 17th day of January, 1879, in * * * Hamil-
ton county, Indiana. Said plaintiff further avers that, on the
28th day of November, 1879, said Peter Cloud and Jacob
Giger, by agreement entered into with said defendants Will-
iams, Giger & Durfee, the mortgagors, and this plaintiff, as-
signed and transferred, by endorsement and assignment in
writing * * * duly acknowledged, all their interest in and
to said mortgage, in consideration that they should be released
from personal liability as such sureties on said note. * * *
Said plaintiff * * * further avers that said real estate em-
braced in said mortgage is now and was at the time said mort-
gage was executed the firm property of said firm of Williams,
Giger & Durfee, and was held for the exclusive benefit of
said partnership, and as part of the assets thereof. Said
plaintiff further avers that his said debt, evidenced by said
note and secured by said mortgage, is * * due and remains
wholly unpaid; that by the express agreement of said plain-
tiff and defendants Williams, Giger & Durfee said plaintiff
was to foreclose said mortgage at once, and release said Jacob
Giger and Peter Cloud as sureties as aforesaid."

The complaint in this case still further alleges that in said

suit to foreclose said mortgage, the said Colborn obtained judgment for the sum of $4,875.48, and a decree for the foreclosure of the mortgage; that the said Anna L. Frankhauser was not, in any manner, made a party to such foreclosure proceedings, and no one appeared for her therein; that the said Colborn became the purchaser of said real estate under such decree of foreclosure, and in the usual course of proceeding received a sheriff's deed therefor; that said real estate was, at the time it was bid in by Colborn, and has ever since continued to be, of the value of $10,000; that after receiving the sheriff's deed the said Colborn obtained quitclaim deeds from the several members of the firm of Williams, Giger & Durfee to said real estate, and has since conveyed the same to James K. Fisher, Henry M. Caylor and Melissa Caylor; that the claims of all persons connected with the mortgage set out as above in this complaint, or deriving a title in any manner through such mortgage to the real estate therein described, are junior to the lien of the judgment obtained by Johnson, as guardian of Anna L. Frankhauser, against Cincinnatus B. Williams and his sureties on his guardian's bond, as herein above stated; that neither the said Cincinnatus B. Williams, nor any of his co-defendants therein, had, at time of the rendition of such judgment, or has since had, any property subject to execution except the real estate described in the mortgage. Wherefore the plaintiff prays the court to order, adjudge and decree:

*First.* That the judgment rendered against the said Cincinnatus B. Williams and his sureties be decreed to be the property of his ward, and that he be substituted to all the rights of Johnson, his predecessor in said judgment.

*Second.* That the lien of said judgment be decreed to have attached to the real estate in controversy on the 25th day of July, 1879, and to have priority over the lien of the mortgage which Colborn assumed to foreclose.

*Third.* That the judgment and decree of foreclosure ob-

tained by Colborn be decreed to be inoperative and void as against rights and interests of his ward in the real estate.

*Fourth.* That an account be taken between the plaintiff and other lien-holders upon the real estate.

*Fifth.* That the mortgage shall be finally decreed to be annulled and set aside, and that the plaintiff be granted any and all other appropriate relief.

Colborn, acting separately, and James K. Fisher, Henry M. Caylor and Melissa Caylor, acting together, filed several demurrers to the complaint. Both demurrers were sustained, and final judgment was rendered in favor of the parties so demurring. Judgment by default was taken against the remaining defendants.

The only question presented upon this appeal is, did the court below err in sustaining either one of the demurrers to the complaint?

As will be seen by a recurrence to the dates, the mortgage herein above set out, was executed nearly a year before the action by Johnson, as guardian, against Cincinnatus B. Williams and his sureties was commenced. Whatever the nature and the extent of the lien created by the mortgage may have been, it was, consequently, older, and had priority over the lien which the judgment obtained by Johnson imposed upon the mortgaged property. Jones Mort., section 383; *Brinkmeyer* v. *Helbling,* 57 Ind. 435; *Krutsinger* v. *Brown,* 72 Ind. 466. But it is argued that as Peter Cloud and Jacob Giger, the mortgagees, had sustained no loss or damage on account of their suretyship for the mortgagors, they had no assignable interest in the mortgage; that for that reason the assignment by them of the mortgage to Colborn conferred on him no title to the mortgage, and his attempted foreclosure was a nullity, and especially as against the interests of the appellant's ward. *Carper* v. *Munger,* 62 Ind. 481.

There are many cases, however, in which the mortgagee, in an indemnifying mortgage, may foreclose before he sustains

actual loss or damage.  *Gunel* v. *Cue*, 72 Ind. 34; *Durham* v. *Craig*, 79 Ind. 117; *Strong* v. *Taylor School Tp.*, 79 Ind. 208.

Whether the mortgagees, in this case, might have so foreclosed, we need not enquire, as the mortgage was one of greater import than a mere indemnity to sureties for the mortgagors.

The first declared purpose of the mortgage, as has been seen, was to secure the payment of the note on which the mortgagees were sureties, and the mortgage concluded with an express agreement by the mortgagors to pay the note secured by it.

Under such circumstances the security afforded by the mortgage enured to the benefit of Colborn, and, upon the maturity of the note, he became entitled to foreclose the mortgage in his own name, for the payment of the note.  Jones Mort., sections 385, 386; Brandt Suretyship, sections 282, 283; Burge Suretyship, 224.

But it is further argued that the foreclosure proceedings had by Colborn were, at least, voidable as against the appellant's ward, because she was not made a party defendant.

In the first place, the judgment obtained by Johnson was only a chose in action, and did not constitute an interest in any particular real estate.  The legal title to the judgment was in Johnson, as the trustee of an express trust, and the duty of collecting it devolved solely upon him, as between him and his *cestui que trust*.  The making of him a defendant to the foreclosure proceedings was, therefore, sufficient to bind the ward in any matter pertaining to the enforcement of the judgment.

If the ward had held a specific interest in the mortgaged property other than as owner of the equity of redemption, the omission to make her a party to the proceedings to foreclose would not, necessarily, have invalidated the foreclosure. Her right to redeem would only, as a general rule, have been reserved.  Jones Mort., sections 1395, 1399.

Other questions are discussed by counsel, but no formal

decision need be made upon them, as, for the reasons given, the judgment will have to be affirmed.

The judgment is affirmed, with costs.

Filed Dec. 13, 1883.