Filed April 14, 1896.

---

No. 17,756.

## GOFF ET AL. *v.* HEDGECOCK ET AL.

MORTGAGE.—*To Indemnify Sureties.*—*When Action May be Maintained.*—An action to foreclose a mortgage, given to indemnify the mortgagees as sureties for the mortgagor, containing a stipulation that the mortgagor will pay the debts secured, may be maintained as soon as the obligations are due and unpaid without payment of the same by the mortgagees, and compensation for the total probable loss may be recovered as damages.

SAME.—*Sale of Personalty by Certain Mortgagees, by Agreement of Parties.*—*Waiver.*—*Foreclosure as to Realty Covered by Same Mortgage.*—Under a mortgage of both personal and real property, containing no provision as to the possession or sale of the personal property, an agreement between the parties to the mortgage that the personalty should be sold by certain of the mortgagees, and the proceeds applied on the debt which it secured, does not amount to a waiver of the right to foreclose as to the realty, to supply a deficiency remaining after application of the proceeds of the personalty.

SAME.—*Sale of Mortgaged Personalty by Certain Mortgagees.*—*Compensation for Services.*—If certain of the mortgagees, under a

mortgage conferring no right of possession by the mortgagees, or right of sale by them, and by agreement of the other mortgagees and the mortgagor, take possession of and care for and sell the mortgaged personalty, they are entitled, as against their co-mortgagees, to a reasonable compensation for such services out of the proceeds of sale.

From the Tippecanoe Superior Court.

*Holstein & Barrett,* for appellants.

*Palmer & Palmer* and *Kent & Irwin,* for appellees.

MONKS, J.—This action was brought by appellees to foreclose a mortgage given by DeWitt C. Bryant to appellees to indemnify them as his sureties on divers promissory notes, executor's, administrator's and guardian's bonds.

Appellant Goff, who alone appeals, filed an answer in eight paragraphs, to each of which appellees demurred for want of facts, which demurrer was sustained to the fourth paragraph and overruled as to the other paragraphs. Appellee filed a reply in general denial. At the trial of the cause, after the evidence was all in, the appellant Goff was permitted to file a cross-complaint, wherein he set up that among the debts secured by the mortgage to appellees was a note to Phebe Culver, upon which Bryant was principal and Seawright and Beaver were sureties; that Culver had recovered a judgment on said note in the Clinton Circuit Court against Bryant and Seawright for $1,174.00 and costs, and that at the time he bid in the real estate at the sheriff's sale on the execution issued on the Milroy judgment, there was also in the hands of the sheriff an execution issued on said Culver judgment and that he bid $6,000.00 at the sheriff's sale made on the Milroy judgment, and out of the money thus paid by him the Culver judgment was

fully paid and satisfied. Prayer that he be subrogated to the rights of Seawright in said mortgage, etc.

A trial by the court resulted in a finding and judgment in favor of appellees on their complaint, and a finding and judgment in favor of appellant Goff on his cross-complaint.

Appellant filed a motion for a new trial, which was overruled. He next filed a motion to modify the judgment.

The errors assigned by appellant and not waived call in question the action of the court, First, in overruling the demurrer to the complaint; Second, in overruling appellant's motion to modify the judgment; Third, in overruling the motion for a new trial.

Appellant insists that "the complaint is insufficient because it does not show that appellees jointly, as sureties, have been compelled to pay a dollar for the mortgagor." The complaint alleges payments, some joint and others by individual sureties. The complaint also alleges the insolvency of the mortgagor, Bryant, and that the mortgage, after describing the bonds and notes secured, contains the following clause: "and the mortgagor expressly agrees to pay the sums of money above secured, without any relief from valuation and appraisement laws."

It is settled law in this State that where a mortgage given to secure the mortgagees from loss by reason of their having become surety for the mortgagor contains a stipulation "that the mortgagors will pay the sums of money above secured," if such obligations are not paid when due, the mortgagees, without having first paid the same, can maintain an action for the foreclosure of such mortgage and recover as damages a compensation for the total probable loss. *Gunel* v. *Cue, Admr.*, 72 Ind. 34, and cases cited; *Bodkin* v. *Merit*,

86 Ind. 560, and cases cited; *Durham* v. *Craig,* 79 Ind. 117, and cases cited; *Strong* v. *Taylor School Township,* 79 Ind. 208; *Loehr, Guard.,* v. *Colborn,* 92 Ind. 24; *Reynolds* v. *Shirk,* 98 Ind. 480; *Malott* v. *Goff,* 96 Ind. 496.

It is clear that the complaint is not insufficient for the reason urged by appellant.

It is next urged that the court erred in overruling appellant's motion for a new trial.

The causes assigned for a new trial were :

"1. The damages assessed are excessive.

"2. The allowance to Newton J. Gaskill for services rendered and money expended in caring for the mortgaged chattels is erroneous, unjust and contrary to law.

"3. The allowance to James A. Hedgecock for services rendered and money expended in caring for the mortgaged chattels is erroneous, unjust and contrary to law.

"4. The finding of the court is not sustained by sufficient evidence."

We have read the evidence, and it is clear that there is evidence which sustains the court upon every material point in its finding. There was evidence from which the court might have found a larger sum in favor of appellees than it did.

The real question presented in the motion for a new trial and the motion to modify the judgment is whether the court erred in making allowance to Hedgecock and Gaskill for their services in caring for and selling said stock of drugs and fixtures.

It appears from the evidence that Dewitt C. Bryant, on the 10th day of April, 1893, executed to appellees a mortgage on certain real estate and a stock of drugs to indemnify them as his sureties on promissory notes, administrator's, executor's and guardian's bonds. The

mortgage was in the ordinary form of a real estate mortgage, and contained no provision for the possession of the personal property, nor any provision authorizing the sale thereof by the mortgagees. On the 11th of April, the mortgagees, the appellees in this case, entered into an agreement with Bryant, the mortgagor, which was reduced to writing, by which said Bryant and James H. Bryant took possession of said stock of drugs and fixtures as agents for the mortgagees, with full power to sell the same at retail or the whole stock, and apply the proceeds to the payment of reasonable wages to themselves, second to the purchase of such goods as should be necessary to replenish the stock, and, third, to the payment of the several obligations mentioned in the mortgage.

Afterwards, in April, Jacob Milroy recovered two judgments against Dewitt C. Bryant, and one Andrew J. Hale also recovered a judgment against him. Executions were issued upon these judgments, and on April 22 were levied upon said stock of drugs and fixtures, and a part of the real estate described in the mortgage. On the 28th day of April, Milroy and Hale, the plaintiffs in said judgments, entered into a written agreement with the mortgagees that notwithstanding the levy on said stock of drugs the mortgagees should proceed to sell the entire stock at a reasonable price, and upon such terms as might be determined upon by Hedgecock and Gaskill, mortgagees, and Kent, the attorney of Milroy and Hale, a committee selected by the parties to said agreement. The duties of the committee were to oversee the disposition of the stock of goods and see that the proceeds thereof were properly applied. Gaskill was appointed treasurer of the committee, to receive all money for goods sold and apply the same, first, to the payment of the necessary ex-

penses, second, to the payment of the obligations secured by the mortgage.

Afterwards, on October 9, 1893, the committee, with the knowledge and consent of the mortgagor, mortgagees, and said Milroy and Hale, sold the stock of drugs and fixtures for $6,101.50. Five thousand and two hundred dollars of the purchase-money was paid in real estate and the balance in cash.

On December 2, 1893, the sheriff, by virtue of a *venditioni exponas*, issued on the judgment in favor of *Milroy* v. *Bryant*, heretofore mentioned, sold a part of said mortgaged real estate to the appellant Goff. The amount bid at said sheriff's sale by Goff was more than sufficient to pay the Milroy and Hale judgment, and the balance of the amount paid by him at said sale, about $1,200, was applied on an execution in the hands of the sheriff in favor of *Culver* v. *Bryant*, principal, and James A. Seawright and Edward C. Beaver, sureties. The Milroy judgments and the Culver judgments were rendered April 21, 1891, and executions were issued and levied at the same time. The mortgage sued upon was executed to Seawright, one of the mortgagees, to secure him against loss as surety on the note upon which said judgment in favor of Culver was rendered. The court found that the amount for which the drugs and fixtures were sold, $6,101.50, was largely in excess of the value thereof, and that Hedgecock and Gaskill were entitled to compensation for services in selling said stock of drugs, stating the amount.

Appellant insists that the sale of the stock of drugs was a full satisfaction of the mortgage debt, and cites *Landon* v. *White*, 101 Ind. 249, to sustain this contention. That case is not in point. The personal property in this case was delivered by Bryant to the mortgagees under a written agreement, which, with the

written agreement afterwards entered into, made full provision for all expenses and what amount should be applied on the liabilities secured by the mortgage, that was the amount realized after all expenses were paid, every step taken was consented to and acquiesced in by the mortgagor and mortgagees, and was also fully authorized by the agreements.

Appellant next urges that if the sale of the goods was not a satisfaction of the liabilities secured by the mortgage, the same should have been charged to the mortgagees at their full value. There is nothing in this contention, for the reason that the same was charged to the mortgagees as $6,101.50, the amount for which they were sold, which the court found was largely in excess of their actual value.

It should be observed that appellant purchased a part of the mortgaged real estate long after the services of Hedgecock and Gaskill were rendered and after the goods were sold, and that he has no right to contest the allowances to Hedgecock and Gaskill, except as he may be subrogated to the rights of Seawright under the mortgage sued upon and the rights of Milroy as a purchaser of the mortgaged real estate at sheriff's sale on his, Milroy's, judgment against Bryant. Seawright and Milroy were each parties to the written agreement under which the services of Hedgecock and Gaskill were rendered, and we are not aware of any authority which would permit them to successfully resist a reasonable allowance for such services. They received the benefit of their services, which was rendered at their request and with their knowledge and consent. It is not a case where all were equally bound and had the same right to perform the services as in a partnership. But they were selected by the other interested parties to take care of and sell the stock of drugs, which they did. The other mortgagees had no power

to take care of or sell the goods. This authority was given by the agreements to Hedgecock, Gaskill, Kent and Bryant. We think it may be inferred from the two agreements that compensation was to be paid for taking care of and selling the stock of goods. For these services Hedgecock and Gaskill were entitled as against the mortgagees at least to a reasonable allowance to be paid out of the proceeds of the sale of the goods. 27 Am. and Eng. Ency. Law, 181–184; *Muscogee Lumber Co.* v. *Hyer*, 18 Fla. 698, s. c. 43 Am. Rep. 332; *Gibson's Case*, 1 Bland Ch. (Md.) 138, s. c. 17 Am. Dec. 257 (266–274); *Ingraham* v. *Kirkpatrick*, 8 Ired. Eq. (N. C.), 62.

Appellant urges that they were mortgagees in possession, and that the rule is that a mortgagee in possession will not be allowed compensation for his trouble in taking care of the property, even though there is an agreement to that effect, citing Cobbey on Chattel Mortgages, section 932. While such may be the correct rule as between mortgagor and mortgagee, which we need not, and do not, determine in this case, it is certainly not the rule as between the mortgagees themselves. The question here is between two of the mortgagees and appellant, who claims under another mortgagee in the same mortgage. Here there was an agreement by which two of the mortgagees were authorized to take care of and sell the goods. The evidence shows, and the court found, that they rendered services under this agreement, and the value of said services is also shown by the evidence and found by the court.

We do not think the court committed a reversible error in making them an allowance. So far as appellant is concerned, he is not in a position to object to an allowance for the services mentioned, but he has the

right to object if the allowance is unreasonable.   He makes no such complaint, however.

We think the case was fairly tried, and that appellant has no just grounds for complaint.

The judgment is affirmed.

Filed April 15, 1896.